Filed 12/23/14 Certified for Publication 1/20/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| STOCKTON MORTGAGE, INC. et al., | C071210 |
| Cross-complainants and Appellants, | (Super. Ct. No. 39-2009-00213904-CU-BC-STK) |
| v. | |
| MICHAEL TOPE et al., | |
| Cross-defendants and Respondents. | |

This is an appeal from a cross-defendant's summary judgment granted First American Title Insurance Company (First American) in a cross-action to recover moneys under a policy of title insurance following a default on a real estate loan to purchase and rehabilitate a residence. The property was subject to a notice of abatement action issued by San Joaquin County requiring repair of defects in the rehabilitation of the residence. The principal claim is that First American breached the title insurance policy by failing to provide coverage for the notice of abatement action.

Plaintiffs, investors in a real estate loan, sued defendants and cross-complainants Stockton Mortgage Real Estate Loan Servicing Corporation (SMRELS), Stockton Mortgage, Inc. (Stockton Mortgage), Stockton Management & Development, Inc.

1

(Stockton Management), and Ross F. Cardinalli Jr. (collectively cross-complainants) for damages arising from cross-complainants' alleged failure to follow up on the status of the release of a notice of abatement action. Cross-complainants, in turn, initiated the instant action against First American, Alliance Title Company (Alliance), and two of Alliance's employees for damages, indemnity, and declaratory relief arising out of First American's refusal to provide coverage under the title insurance policy, and Alliance's alleged representation, on behalf of First American, that it would obtain a release of the notice of abatement action prior to the close of escrow.

First American moved for summary judgment on the principal grounds that the notice of abatement action is not covered under the title insurance policy, cross-complainants are not insured under the title insurance policy, and the preliminary title report relied on by cross-complainants is not a contract. The trial court granted First American's motion and entered summary judgment in its favor. Cross-complainants appeal. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Loan to Joshua Prinze*

Stockton Management loaned $315,000 to Joshua Prinze to "assist with the purchase and rehabilitation of" a single family home located at 2447 West Michigan Avenue in Stockton. SMRELS solicited the money used to fund the loan from various investors. Prospective investors were advised that the property "is being purchased as a shell and is to be completely remodeled . . . ." The purchase price of the property was $230,000. $72,575 in construction funds were to be held by SMRELS and disbursed on a work progress basis. The seller carried a second of $25,000.

The loan was secured by a deed of trust encumbering the property. The deed of trust was recorded November 4, 2005, and lists Prinze as the borrower, Stockton Mortgage as the trustee, and Stockton Management as the lender/beneficiary.

2

On November 21, 2005, Stockton Management assigned all of its beneficial interest under the deed of trust to the investors.

*B. The Preliminary Title Report*

On September 29, 2005, in response to the title insurance application, Alliance issued a preliminary title report, which stated in pertinent part: "[T]his Company . . . is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance . . . insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms. . . . ." Among the exceptions to coverage listed in the preliminary title report was a notice of abatement action, recorded June 17, 2004, along with the following statement: "**Prior to close of Escrow Alliance Title Company will require that a FULL RELEASE be obtained**."

*C. The Notice of Abatement Action*

The notice of abatement action referenced in the preliminary title report, read as follows: "The owner of record was most recently notified of the aforementioned non-complying conditions on May 25, 2004. [¶] Pursuant to provisions of Section 17985 of the California Health & Safety Code, this NOTICE OF ABATEMENT ACTION has been caused to be recorded in the office of the County Recorder. [¶] The Enforcement Agency may declare this notice null and void by filing a Release of Notice of Abatement Action. The filing of such release shall be contingent upon the issuance of necessary permits, payment of required fees, if any, correction or removal of violations and inspection to verify compliance with applicable requirements." An unrecorded notice and order to abate housing and dangerous building violations, dated May 25, 2004, listed

3

26 violations of Health and Safety Code section 17920.3,[1] including various structural, mechanical, electrical, and plumbing violations.

On June 9, 2005, Alliance wrote to the San Joaquin County Environmental Health Department (County) concerning the notice of abatement action. The letter read in pertinent part: "It is the intent of the parties to the above referenced escrow to pay the above referenced lien in full upon closing. [¶] In order to comply with these intentions, you are requested to provide our office with your satisfaction of matured installment, which will be recorded only when we have funds necessary to satisfy your demand, if any. [¶] If the above lien has been paid, please send a release for recording along with this letter stating the lien has been paid in full." Alliance sent an identical letter on July 27, 2005.

On September 26, 2005, the County faxed a response to Alliance, stating: "Unfortunately a Release of Abatement Action CANNOT be issued. Violations on the property continue to exist. Once the violations get corrected and our enforcement costs get paid in full then we will issue a Release of Abatement Action. Included is an invoice for our enforcement costs, a list of violations that were found on the property and information on how to obtain permits to bring the property up to code."

The outstanding enforcement costs in the amount of $2,005 were paid by Alliance on November 7, 2005. The notice of abatement action, however, was not released because the violations had not been corrected.

---

[1] Section 17920.3 of the Health and Safety Code (Substandard Buildings) states in pertinent part: "Any building or portion thereof . . . in which there exists any of [a number of enumerated] conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is declared to be a substandard building . . . ."

*D. The Title Insurance Policy*

Alliance issued a lender's title insurance policy, underwritten by First American, which stated in part, "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN . . . insures, as of Date of Policy shown in Schedule A [(November 4, 2005)], against loss or damage, not exceeding the Amount of Insurance stated in Schedule A [($315,000)], sustained or incurred by the insured by reason of: [¶] . . . [¶] 2. Any defect in or lien or encumbrance on the title; [¶] 3. Unmarketability of the title." The policy further stated that First American "will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations." The notice of abatement action that was excepted from coverage in the preliminary title report was not mentioned in the title insurance policy. Additional policy provisions are set forth in the discussion of the breach of contract (title insurance policy) cause of action.

*E. Prinze's Default and Foreclosure*

In 2006 Prinze defaulted on the loan. At that time, all rehabilitation funds ($72,575) had been distributed, and none of the work on the property had been completed. The investors foreclosed on the property and purchased it at a trustee's sale. The beneficiaries under the trustee's deed upon sale are the investors.

*F. Stockton Mortgage's Claim Under the Title Insurance Policy*

On July 14, 2008, Stockton Mortgage submitted a claim to First American on behalf of itself and the investors under the title insurance policy for the costs associated with obtaining a release of the notice of abatement action. On October 27, 2008, First American denied the claim. It found the notice of abatement action was not a defect in or lien or encumbrance on the title and did not affect the marketability of title, and thus, was not covered under the policy. As for the claim that the notice of abatement action was

5

listed in the preliminary title report along with the notation that "**Prior to close of Escrow Alliance Title Company will require that a FULL RELEASE be obtained**," First American found that neither the preliminary title report nor the title insurance policy were representations as to the state of title, and thus, the claim was not covered. First American further concluded that the matter "appear[ed] to [be] related to administration of escrow," and First American was not the escrow holder.

### G. *The Investors' Suit Against Cross-Complainants*

On June 9, 2009, some of the investors (plaintiffs) sued cross-complainants for breach of contract, misrepresentation, fraud, breach of fiduciary duty, and unfair business practices.[2] The operative complaint[3] alleged: (1) at the time cross-complainants were preparing to make the loan to Prinze, they obtained a title report that revealed the notice of abatement action; (2) the release of the notice of abatement action was a condition for making the loan; (3) unknown to plaintiffs, cross-complainants failed to obtain a release of the notice of abatement action; and (4) had cross-complainants followed up on the status of the release prior to making the loan either the notice of abatement action would have been released or the loan would not have been made. Plaintiffs claimed they had been "damaged by loss of their investment monies in the approximate aggregate amount of $240,000 plus further costs and expenses incurred and continuing to be incurred for taxes, insurance, repairs, permits, and the like."

---

[2] In addition to SMRELS, Stockton Management, and Stockton Mortgage, plaintiffs also sued Ross F. Cardinalli, Jr., whom plaintiffs alleged was "the President and/or controlling officer of each entity comprising Stockton Mortgage."

[3] All references to the complaint herein are to the third amended complaint, filed June 23, 2011.

*H.  Cross-Complainants' Suit Against First American, Alliance, and Others*

On October 16, 2009, cross-complainants in turn filed the instant action against First American, Alliance, two Alliance employees, and others.[4]  The operative cross-complaint[5] alleges in pertinent part:  First American breached the title insurance policy by failing to provide coverage for the notice of abatement action (second cause of action); First American and Alliance breached written and oral contracts to obtain a release of the notice of abatement action prior to the close of escrow (third & fourth causes of action, respectively); First American and Alliance were negligent in failing to obtain a release of the notice of abatement action prior to the close of escrow  (fifth cause of action); First American and Alliance negligently misrepresented that they would obtain a release of the notice of abatement action prior to the close of escrow (sixth cause of action); First American and Alliance must indemnify cross-complainants for any damages recovered by plaintiffs as a result of their failure to obtain a release of notice of abatement action (seventh & eighth causes of action for implied & equitable indemnity).  Cross-complainants also seek declaratory relief against First American (ninth cause of action) concerning their respective rights under the title insurance policy.

*I.  First American's Summary Judgment Motion*

First American moved for summary judgment on the cross-complaint, or in the alternative summary adjudication as to each of the causes of action alleged against it (second through ninth causes of action).  First American argued in part:  (1) the breach of written contract (title insurance policy) cause of action has no merit because cross-complainants are not insured under the policy, and even if they are, the notice of abatement action is not covered under the policy; (2) the breach of written contract

---

[4]  Cross-complainants also sued plaintiffs for breach of contract (first cause of action).

[5]  All references to the cross-complaint herein are to the second amended cross-complaint, filed July 25, 2011.

(preliminary title report) cause of action has no merit because the preliminary title report is not a contract but an offer to issue title insurance; (3) the breach of oral contract cause of action has no merit because there is no evidence of a separate oral agreement, and even if there was, Alliance acted outside the scope of its agency when it made the alleged agreement; (4) the negligence and negligent misrepresentation causes of action have no merit because First American had no independent tort duty to cross-complainants; (5) the implied indemnity cause of action has no merit because there was no contractual relationship between cross-complainants and First American; (6) the equitable indemnity cause of action has no merit because the underlying claim of negligence against First American has no merit; (7) the declaratory relief cause of action has no merit because cross-complainants do not have any rights under the title insurance policy; and (8) each of the causes of action against First American is time barred.

The trial court granted First American's motion and entered summary judgment in its favor. It found (1) the breach of written contract (title insurance policy) and declaratory relief causes of action have no merit because cross-complainants are not insured under the title insurance policy, and "[t]he Notice of Abatement Action is not a defect in, or lien or encumbrance on *title*," and thus, is not covered under the policy, (2) the breach of written contract (preliminary title report) has no merit because a preliminary title report "is just an offer to issue a title policy . . . ; it is not a representation regarding the condition of title . . . and cannot be relied upon like an abstract of title," (3) the breach of oral contract cause of action has no merit because "there is no competent evidence that [cross-complainants] had any separate oral agreement with First American; the preliminary title report is merely an offer, not a contract," (4) the negligence and negligent misrepresentation causes of action have no merit because "there is no evidence that First American had or breached any separate tort duty to" cross-complainants, and (5) the indemnity causes of action have no merit "[b]ecause First American committed no breach of contract or tort against [cross-complainants]." The trial court also found each

8

of the causes of action against First American are time barred under Code of Civil Procedure section 339, subdivision 1. The trial court did not rule on First American's claim concerning the scope of Alliance's agency.

DISCUSSION

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale." (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

We apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought. . . . We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.) A cross-defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168-169 (*Teselle*).) If the cross-defendant fails to make this initial showing, it is unnecessary to examine the cross-complainant's opposing evidence and the motion must be denied. (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle,* at p. 169.) However, if the moving papers make a prima facie showing that justifies a judgment in the cross-defendant's favor, the burden shifts to the cross-complainant to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle,* at p. 169.)

In determining whether the parties have met their respective burdens, the court must " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences

9

[citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.) Thus, "a party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

I

The Trial Court Did Not Err in Entering Summary Judgment as to the Breach of Written Contract (Title Insurance Policy) and Declaratory Relief Causes of Action Because No Reasonable Trier of Fact Could Conclude the Notice of Abatement Action is a Lien or Encumbrance or That Cross-Complainants Are Insured Under the Policy

Cross-complainants contend the trial court erred in entering summary judgment as to the second and ninth causes of action for breach of written contract (title insurance policy) and declaratory relief, respectively, because, contrary to First American's assertions and the trial court's ruling, the notice of abatement action constitutes a lien or encumbrance, and thus, is covered under the policy, and cross-complainants are insured under the title insurance policy.

To prevail on a breach of contract cause of action, cross-complainants must establish: (1) a contract; (2) its performance or excuse for nonperformance; (3) breach; and (4) damages. (*Acoustics, Inc. v. Trepte Construction Co.* (1971) 14 Cal.App.3d 887, 913 (*Acoustics*).)

With respect to the breach of contract cause of action, the cross-complaint alleges: First American "entered into a written Policy of Title Insurance agreement with SMRELS (erroneously identified as 'Stockton Mortgage, Inc.' in the Policy of Title Insurance) and its successors and/or assigns"; under that policy, "First American . . . agreed to insure SMRELS, and/or [its] successors and/or assigns, against any loss or damage sustained by

10

reason of, among other things, any defect in or lien or encumbrance on the title of the Subject Property" and "to pay the costs, attorneys' fees, and expenses in defense of the title or the lien of the insured mortgage on the Subject Property"; First American breached the title insurance policy by refusing to "provide coverage for the Notice of Abatement Action"; and as a result of First American's breach, "SMRELS has suffered damages in an amount to be proved at trial."

As for the declaratory relief cause of action, the cross-complaint alleges that "[a]n actual controversy has arisen and now exists between Cross-Complainants and First American Title concerning their respective rights and duties under the Policy of Title Insurance," and seeks "a judicial determination of [such] rights and duties."

First American's summary judgment motion asserted that "the policy does not provide coverage for any damages arising out of the Notice of Abatement, because the Notice merely notifies the owners of the property of the possible future post-policy enforcement, and is not a lien, defect or encumbrance on title of the property."

In their opposition to the motion for summary judgment, cross-complainants argued the notice of abatement action constituted a lien or encumbrance because it accrued penalties and other assessments.

*Elysian Investment Group v. Stewart Title Guaranty Co.* (2002) 105 Cal.App.4th 315 (*Elysian*), cited by both parties, is instructive. There, the court summarized the issue before it as follows: "Does the recording of a 'notice of buildings, structures, or premises classified as either hazardous, substandard or a nuisance' comprise either a 'defect in or lien or encumbrance on the title' or an 'unmarketability of the title' within the meaning of those terms of coverage in a title insurance policy?" (*Id.* at p. 317.) The court began its analysis by defining two key terms: "An encumbrance has been defined as 'any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee.' [Citation.] Encumbrances 'include[] taxes, assessments, and all liens upon real property.' (Civ. Code, § 1114.) A lien is 'a charge

11

imposed upon specific property by which it is made security for the performance of an act.' (Code Civ. Proc., § 1180.)" (*Id.* at pp. 320-321.) The court found that the notice "did not affect [the insured's] title to the property," and "therefore is not a 'defect in or lien or encumbrance on the title.' The Notice, instead, warns that there are physical defects at the property. [Citations] It states that the property is substandard, as defined in the municipal code, that the owner must comply with the substandard order, and that the city may remedy the deficiencies if the owner does not do so. [Citation.] The Notice thus informed the owner of the existence of a duty, created by ordinance, to comply with local building and zoning requirements. It also raised the possibility of future enforcement, if the owner did not comply." (*Id.* at p. 321, fn. omitted.) The court explained that "[e]nforcement, . . . require[s] further action on the part of the city. [Citation.] Had the department repaired the property and assessed the costs against the homeowner, the board of public works could ultimately have recorded the assessment as a lien." (*Id.* at pp. 321-322, fn. omitted.) "Title insurance does not insure against future events." (*Id.* at p. 322) Thus, the mere possibility of a lien did not amount to a defect in or lien or encumbrance on the title. (*Ibid.*) The court also rejected the insured's claim that the notice affected the marketability of its title, noting that " ' "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." ' [Citation.]" (*Id.* at p. 324.) The court determined that the notice "provides notice of the physical condition of the property, for which there is no coverage. [Citation.] It does not raise any doubts about title." (*Ibid.*)

Like the notice at issue in *Elysian*, the notice of abatement action at issue here is a notice that the premises is substandard. The notice of abatement action references a May 25, 2004, notice and order to abate housing and dangerous building violations, which lists 26 violations of Health and Safety Code section 17920.3 (Substandard Buildings). Like the notice at issue in *Elysian,* the notice of abatement action at issue here relates to the physical condition of the property and raises the issue of future enforcement. As in

12

*Elysian*, the enforcement agency has yet to repair or demolish the property, much less assess the costs associated therewith against the owner or record such assessment as a lien. Thus, like the court in *Elysian,* we conclude the notice of abatement action is not a defect in or lien or encumbrance on the title.

Contrary to cross-complainants' assertion, the accrual of enforcement costs does not transform the notice of abatement action into a defect in or lien or encumbrance on the title. Cross-complainants confuse the recording of the notice of abatement action with the County's enforcement efforts. As the court recognized in *Elysian*, the recording of the notice itself does nothing more than "provide[] notice of the physical condition of the property, for which there is no coverage." (*Elysian, supra*, 105 Cal.App.4th at p. 324.) While it is true that here, unlike *Elysian*, there is evidence that the County engaged in some limited "abatement activity" and sought to recoup its "enforcement costs," which totaled $2,005,[6] there is no indication the County recorded a lien against the property to

---

[6] The invoice, paid by Alliance at the close of escrow, included the following costs:

| | | |
|---|---|---|
| 1/6/2005 | Substandard Housing Abatement Activity | $1088.10 |
| 1/6/2005 | Recording Fee - Notice of Abatement Action | $13.00 |
| 1/6/2005 | Title Search Expense | $125.00 |
| 1/6/2005 | Recording Fee - Release of Abatement | $7.00 |
| 4/14/2005 | Substandard Housing Abatement Activity | $167.40 |
| 6/14/2005 | Substandard Housing Abatement Activity | $325.50 |
| 8/2/2005 | Substandard Housing Abatement Activity | $18.60 |
| 8/2/2005 | Invoice/Abatement - Rush | $93.00 |
| 9/19/2005 | Substandard Housing Abatement Activity | $74.40 |
| 10/14/2005 | Invoice/Abatement - Rush | $93.00 |

recover its costs, as contemplated in *Elysian*. (*Id.* at p. 321.) More importantly, it is undisputed that all outstanding enforcement costs were paid by Alliance at the close of escrow. Thus, even assuming the accrual of enforcement costs could be said to constitute a defect in or lien or encumbrance on the title, those costs were paid in full at escrow, and thus, any defect in or lien or encumbrance on the title as a result thereof was extinguished.[7] Finally, to the extent cross-complainants assert that such costs continue to accrue, they have presented no evidence that such is the case. Moreover, the title policy specifically excludes from coverage any defects, liens, encumbrances, adverse claims or other matters "attaching or created subsequent to Date of Policy."[8] For all the foregoing reasons, we conclude the trial court properly determined that the notice of abatement

| | TOTAL DUE: | $2005.00 |
|---|---|---|

[7] While technically speaking the enforcement costs remained outstanding as of the date of the policy, November 4, 2005, they were paid on November 7, 2005. Thus, even assuming for argument's sake that the outstanding costs amounted to a lien or encumbrance on title as of the date of the policy, no injury or loss was sustained or incurred as a result thereof because they were paid three days later on November 7, 2005.

[8] In their opposition to the motion for summary judgment and their briefing on appeal, cross-complainants appear to assert that First American breached various agreements and duties to them by failing to obtain a release of the notice of abatement action, but also by failing to obtain a release of a notice of building code violation. As did the trial court, we limit our consideration to First American's alleged failure to obtain a release of the notice of abatement action. Plaintiffs' claims against cross-complainants arise from cross-complainants alleged failure to follow up on the release of the notice of abatement action. The causes of action set forth in the operative cross-complaint likewise are based upon First American and Alliance's alleged failure to obtain a release of the notice of abatement action. In any event, there is no evidence in the record to support a finding that the notice of building code violation constitutes a defect in or lien or encumbrance on the title or that the failure to obtain its release caused cross-complainants any damage whatsoever.

14

action is not a lien or encumbrance on the title, and properly entered summary judgment as to the second and ninth causes of action on that basis.

Even assuming for argument's sake that the notice of abatement action does constitute a defect in or lien or encumbrance on title, cross-complainants' second and ninth causes of action would still fail because cross-complainants are not insured under the policy.

First American's summary judgment asserted cross-complainants are not insured, and thus, lack standing to assert a claim under the policy. In support of their assertion, First American pointed to the policy itself, which defines " 'insured' " as "the insured named in Schedule A," and "the owner of any indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness . . . ." The policy further provides: "The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest." Schedule A describes the "insured mortgage" as the deed of trust recorded November 4, 2005. The insured named in schedule A is Stockton Mortgage; however, Stockton Mortgage never had an interest in the land or held an indebtedness secured by a purchase money mortgage or deed of trust. Stockton Management was named as the lender/beneficiary in the deed of trust recorded on November 4, 2005; however, it assigned all of its beneficial interest under the deed of trust to the investors on November 21, 2005. Lacking any interest in the property and holding no indebtedness under the deed of trust, First American argued cross-complainants are not insured under the policy.

In their opposition to the summary judgment motion, cross-complainants claimed that First American's argument "overlooks the fact that [cross-complainants] had an insurable interest in the property both when the policy took effect and at the time of the

15

loss . . . ." According to cross-complainants, "the claim arose prior to the assignment since the [notice of abatement action] on title as of the date of the Title Policy, and the lien[] had accrued assessments and penalties." Cross-complainants relied on Insurance Code, section 301, which states: "A change of interest in a subject insured, *after the occurrence of an injury which results in a loss,* does not affect the right of the insured to indemnity for the loss." (Italics added.) Cross-complainants, however, failed to identify any *loss* they suffered *prior* to the assignment on November 21, 2005, much less cite to any evidence that would support such a finding.

Cross-complainants also asserted that coverage continued despite the assignment because they have "potential liability for warranties and of covenants made in connection with its assignment of the Deed of Trust to the Investors . . . ." In support of their assertion, they relied on the policy's provision that "[t]he coverage of this policy shall continue in force as of Date of Policy in favor of an insured . . . only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest." Cross-complainants again failed to identify what warranties or covenants they gave the investors as part of the assignment, much less point to any evidence of such.

Finally, cross-complainants claimed they had standing as third party beneficiaries under the title insurance policy. More particularly, they argued that "the Servicing Agreement governs the relationship between [cross-complainants] and the Investors, and the Investors' attempts to hold [cross-complainants] liable for title-related issues arising out of such relationship would give [cross-complainants] standing to assert claims under the Title Policy . . . ." This novel argument goes nowhere.

" 'A third party may qualify as a contract beneficiary where the contracting parties must have intended to benefit that individual, an intent which must appear in the terms of the agreement. [Citation.]' [Citation.]" (*Brinton v. Bankers Pension Services Inc.* (1999) 76 Cal.App.4th 550, 558.) It is apparent from the terms of the title insurance

16

policy that Stockton Mortgage and Stockton Management, the only cross-complainants that ever arguably qualified as insureds under the policy, were not intended to benefit under the policy following the assignment on November 21, 2005. To the contrary, as detailed above, the policy expressly provides that "coverage . . . shall continue in force as of Date of Policy in favor of an insured *only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured . . . .*" (Italics added.) Accordingly, cross-complainants failed to raise a triable issue as to whether they are insured under the policy or otherwise had standing to pursue a claim under the policy.

The trial court did not err in entering summary judgment as to the second cause of action for breach of written contract (title insurance policy) and the ninth cause of action for declaratory relief, which seeks a declaration of the parties' rights under the title insurance policy.

## II
### The Trial Court Did Not Err in Entering Summary Judgment as to the Breach of Written Contract (Preliminary Title Report) Cause of Action Because a Preliminary Title Report is Not a Contract as a Matter of Law

Cross-complainants do not appear to challenge the entry of summary judgment as to the third cause of action for breach of written contract (preliminary title report) on appeal, focusing instead on the breach of oral contract cause of action. We address the breach of oral contract cause of action below but pause to observe that summary judgment was properly entered as to the third cause of action for breach of written contract.

The cross-complaint alleges in pertinent part: "By the Preliminary Title Report . . . Alliance Title . . . agreed in writing that 'Prior to close of Escrow Alliance Title will require that a FULL RELEASE be obtained' of the Notice of Abatement Action recorded against the Subject Property," and "Alliance Title and First American Title breached the

17

agreement with SMRELS by failing to obtain a full release of the Notice of Abatement Action."

First American's summary judgment motion asserted the third cause of action for breach of written contract has no merit because, among other things, the preliminary title report is merely an offer and not a contract. Cross-complainants did not specifically address this cause of action in their opposition to the motion for summary judgment, and the trial court entered summary judgment as to this cause of action on the grounds urged by First American.

A preliminary title report is furnished in connection with an application for title insurance and is an *offer* to issue a title insurance policy. (Ins. Code, § 12340.11.) Indeed, the preliminary title report itself provides: "This report . . . is issued solely for the purpose of facilitating the issuance of a policy of title insurance and *no liability* is assumed hereby." (Italics added.)

Because the preliminary title report is not a contract, the trial court did not err in entering summary judgment as to the third cause of action for breach of written contract.

III

The Trial Court Did Not Err in Entering Summary Judgment as to the Breach of Oral Contract Cause of Action Because There Is No Evidence That Would Support a Finding of Such an Agreement

Cross-complainants contend the trial court erred in entering summary judgment as to the breach of oral contract cause of action because, contrary to First American's claim and the trial court's finding, there is evidence Alliance verbally agreed to remove the notice of abatement action prior to the close of escrow.

The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388; *Acoustics, supra,* 14 Cal.App.4th at p. 913.)

18

The cross-complaint alleges in pertinent part: "48. On or about September of 2005, SMRELS and Alliance . . . entered preliminary negotiations regarding issuance of a policy of title insurance for the Subject Property. [¶] 49. By the Preliminary Report . . . Alliance . . . agreed in writing that 'Prior to the close of Escrow Alliance . . . will require that a FULL RELEASE be obtained' of the Notice of Abatement Action recorded against the Subject Property. . . . [¶] . . . [¶] 51. Alliance Title and First American Title breached the agreement with SMRELS by failing to obtain a full release of the Notice of Abatement Action. [¶] 52. As a result of Alliance Title and First American Title's beach of contract, SMRELS has suffered damages in an amount to be proven at trial."

First American's summary judgment motion argued that the breach of oral contract cause of action has no merit because, among other things, there is no evidence of an oral contract. More particularly, First American asserted that although cross-complainants claim a breach of oral contract, cross-complainants refer to a writing in the preliminary title report, which is not a contract, and "[t]he only oral communications alleged are 'preliminary negotiations regarding issuance of a policy of title insurance' . . . . [T]here are no facts or even allegations of any oral contract . . . ."

In their opposition to the motion for summary judgment, cross-complainants asserted that "Alliance Title, on behalf of First American, represented that certain liens would be removed from title." The only evidence cited in support of their assertion was the preliminary title report. Likewise, in response to First American's statement that it "did not have an oral contract with [any cross-complainant] in connection with the subject property, the loan, [or] the title policy," cross-complainants claimed that "Alliance Title, acting as an agent of First American, agreed to remove certain notices from title prior to the close of escrow. This agreement is reflected in the preliminary title report issued by Alliance Title on behalf of First American." In other words, the only evidence cited by cross-complainants to establish the existence of an oral contract was the preliminary title report.

19

In their opening brief on appeal, cross-complainants repeatedly assert that they "asked" or "requested" that the notice of abatement action be removed prior to the close of escrow, and that Alliance "verbally agreed" to obtain a release. Again, their sole support for their assertions is the preliminary title report. In their reply brief, cross-complainants claim that while there is no witness testimony regarding a separate oral agreement, the existence of such can be inferred from the preliminary title report and Alliance's attempts to obtain a release: "If there was no agreement to release the notices, why does the preliminary title report state, in bold print beneath the notices, '**Prior to close of Escrow [the title company] will require that a FULL RELEASE be obtained**.' If there was no agreement, why would Alliance Title send multiple letters to the county asking for the notices to be released? If there was no agreement, why were funds allocated to pay off the assessments under the notices?"

The existence of a separate oral contract cannot reasonably be inferred from the statement in the preliminary title report and Alliance's actions. Such evidence establishes that Alliance and one or more of the cross-complainants *may* have entered into a separate oral agreement pursuant to which Alliance was to obtain a release of the notice of abatement action. But that is all. And that is not enough. Such evidence merely allows speculation about a separate oral agreement, and speculation is not evidence. (*Aguilar, supra,* 25 Cal.4th at p. 864; see also *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 892.)

The trial court did not err in entering summary judgment as to the fourth cause of action for breach of oral contract.[9]

---

[9] Because we conclude cross-complainants failed to make a prima facie showing as to the existence of an oral contract, we need not consider whether they raised a triable issue of material fact as to whether Alliance was acting as First American's agent when it purportedly entered into such a contract.

20

IV

## The Trial Court Did Not Err in Entering Summary Judgment as to the Negligence Cause of Action Because No Reasonable Trier of Fact Could Conclude First American Owed Cross-Complainants a Duty Other Than That Owed Under the Policy

Cross-complainants contend the trial court erred in entering summary judgment as to the fifth cause of action for negligence because "even absent an agreement, First American owed a duty of care to [cross-complainants] by affirmatively undertaking to remove the [notice of abatement action]."[10]

" 'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.' " (*Artiglio v. Corning Inc*. (1998) 18 Cal.4th 604, 614.)

The cross-complaint alleges in pertinent part: "SMRELS engaged the professional services of [First American, Alliance, and Alliance's employees] to prepare and issue a policy of title insurance," and "[a]s a result of that engagement, . . . had a duty to use and exercise reasonable care and skill in providing services to SMRELS," which they "breached . . . by, among other things, failing to obtain a full release of the Notice of Abatement Action . . . ."

First American's summary judgment motion asserted that the negligence cause of action lacks merit because "[t]here is no evidence that First American had any duty to [cross-complainants], other than the duty under the policy. Hence, the alleged duty is contractual only, not an independent duty arising from tort." (Italics omitted.)

---

[10] Cross-complainants also contend that First American owed them a duty of care "by virtue of the agreement . . . that First American would 'require' release of the notices . . . ." That contention is premised on a contractual relationship between First American and cross-complainants concerning the release of the notice of abatement action. As detailed above, cross-complainants failed to establish a triable issue of material fact as to the existence of any such relationship.

21

In their opposition to the summary judgment motion, cross-complainants claimed that ". . . First American, through Alliance Title, represented that it would obtain releases for certain liens that were disclosed in the Preliminary Report," and having so agreed, was bound to exercise ordinary care in doing so. As previously discussed, cross-complainants failed to raise a triable issue of material fact sufficient to overcome the entry of summary judgment as to their contract causes of action. Thus, cross-complainants' reliance on the title insurance policy, preliminary title report, or separate oral agreement as a source of First American's alleged duty is misplaced.

In their opening brief on appeal, however, cross-complainants contend that "even absent an agreement, First American owed a duty of care to [cross-complainants] by affirmatively undertaking to remove the [notice of abatement action]. If a party voluntarily undertakes to aid the other, it is under a duty to exercise due care in doing so." Assuming for argument's sake that this argument is properly before us despite not having been raised below (*Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1383 [party may not seek reversal of summary judgment by raising for the first time on appeal an argument not raised in the trial court]), it fails.

Cross-complainants cite *Williams v. State of California* (1983) 34 Cal.3d 18 (*Williams*) in support of their contention that First American owed them a duty of care by undertaking to have the notice of abatement released. The issue in *Williams* was "whether the mere fact that a highway patrolman comes to the aid of an injured or stranded motorist creates an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties." (*Id.* at p. 21.) Although the court held that the defendant state did not owe the plaintiff such a duty under the circumstances of that case, it summarized the applicable "general principles of tort law," upon which cross-complainants rely, as follows: "As a rule, one has no duty to come to the aid of another. . . . [T]he volunteer who, having no initial duty to do so, undertakes to come to the aid of another -- the 'good Samaritan[,]' [h]e is under a duty to exercise due

22

care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.  (Rest.2d Torts, § 323.)" (*Id.* at pp. 23, 27.)[11]  The source of this general principle is Section 323 of the Restatement of Torts Second (Negligent Performance of Undertaking to Render Services), which states:  "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if  [¶]  (a) his failure to exercise such care increases the risk of such harm, or [¶]  (b) the harm is suffered because of the other's reliance upon the undertaking." (Italics added.)  The words " 'physical harm,' " as used in the Restatement Second of Torts, mean "the physical impairment of the human body, or of land or chattels." (Rest.2d Torts, § 7.)[12]  This case does not involve physical harm; accordingly, the doctrine upon which cross-complainants rely does not apply.  (*Love v. United States* (9th Cir. 1989) 915 F.2d 1242, 1248.)[13]

The trial court did not err in entering summary judgment as to the fifth cause of action for negligence.

---

[11]  *Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, also cited by cross-complainants in support of their assertion that First American owed them a duty of care by undertaking, through its agent Alliance, to obtain a release of the notice of abatement action, likewise relies on Section 323 of the Restatement Second of Torts.  (*Coffee v. McDonnell-Douglas Corp.*, at p. 557.)

[12]  In contrast, the word " 'harm' " means "loss or detriment in fact of any kind to a person resulting from any cause."  (Rest.2d Torts, § 7.)

[13]  Because we conclude that the principle upon which cross-complainants base their claim that First American owed them an "affirmative duty" does not apply, we need not address their claim that the "state of title" cases cited by First American and relied on by the trial court are inapposite.

## V
### The Trial Court Did Not Err in Entering Summary Judgment as to the Negligent Misrepresentation Cause of Action Because the Misrepresentations Upon Which Cross-Complainants Rely Are Not Actionable

Cross-complainants contend the trial court erred in entering summary judgment as to the negligent misrepresentation cause of action because it is undisputed that Alliance represented it would have the notice of abatement action released prior to the close of escrow and then failed to do so.

In order to prevail on their negligent misrepresentation cause of action, cross-complainants must establish, among other things, a misrepresentation of a past or existing material fact. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.)

The operative cross-complaint alleges in pertinent part that: Alliance represented to SMRELS in the written preliminary title report that it would obtain a release of the notice of abatement action prior to the close of escrow; First American represented to SMRELS in the title insurance policy that no notice of abatement action was recorded against the property; these representations were false; the true facts were that Alliance did not obtain a full release of the notice of abatement action prior to the close of escrow, the notice of abatement action was recorded against the property, and First American would not provide coverage for any loss or damage sustained by reason of the notice of abatement action.

First American's summary judgment motion argued and the trial court found that the negligent misrepresentation cause of action lacked merit because there is no evidence First American had or breached a duty to cross-complainants. We review the trial court's ruling, not its rationale. (*Ramalingam v. Thompson, supra,* 151 Cal.App.4th at p. 498.) As we shall explain, the representations upon which cross-complainants rely are not actionable as a matter of law.

We begin our analysis with Alliance's alleged representation that it would obtain a release of the notice of abatement action prior to the close of escrow. A representation

generally is not actionable unless it is about "past or existing facts." (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309-310.) Although a false promise to perform in the future can support an *intentional* misrepresentation claim, it does not support a claim for *negligent* misrepresentation. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158-159 (*Tarmann*).) In *Tarmann*, the court held that a misrepresentation that the insurer "would pay for [the insured's] repairs immediately upon their completion" was not actionable negligent misrepresentation because it was a promise of future performance. (*Id.* at p. 158, italics omitted.) According to the *Tarmann* court, there was actionable deceit only if the insurer never intended, at the time it made the representations, to follow through on its promise. (*Id.* at pp. 158-159) Here, Alliance's representation that it would obtain a release of the notice of abatement action prior to the close of escrow likewise was a promise of future performance, and thus cannot be the basis for a negligent misrepresentation cause of action. (See *ibid.*) Nor can cross-complainants establish a claim for intentional misrepresentation (deceit) where, as here, it is undisputed that Alliance attempted to obtain a release but ultimately was unsuccessful. (*Ibid.*)

Next we consider First American's alleged representation in the written title insurance policy that no notice of abatement action was recorded against the property. It is undisputed that the title insurance policy said nothing about the notice of abatement action. As we understand it, cross-complainants claim that by failing to include the notice of abatement action in the title insurance policy after including it in the preliminary title report, First American impliedly represented that the notice of abatement action had been released. This alleged representation likewise is not actionable. "The tort of negligent misrepresentation requires a 'positive assertion' and does not apply to implied misrepresentations." (*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal. App. 4th 828, 840, fn. 2.)

The trial court did not err in entering summary judgment as to the sixth cause of action for negligent misrepresentation.

## VI
### The Trial Court Did Not Err in Entering Summary Judgment as to the Implied and Equitable Indemnity Causes of Action Because There Is No Evidence of Fault on the Part of First American

Finally, cross-complainants contend the trial court erred in entering summary judgment as to the seventh and eighth causes of action for implied and equitable indemnity, respectively, because cross-complainants "raised a triable issue of material fact as to whether First American is responsible in part for plaintiff's [*sic*] damages. Although First American denies that it directly agreed to obtain [a] release of the notices, it cannot deny the evidence that Alliance . . . actually *undertook* to obtain releases of the notices."

Cross-complainants' causes of action for implied contractual and equitable indemnity both are premised on the following allegations: (1) plaintiffs sued cross-complainants to recover damages for the notice of abatement action, (2) any damages recovered by plaintiffs against cross-complainants "were caused primarily and ultimately by the breach of contracts [and/or negligence], as herein alleged" by Alliance and First American, (3) cross-complainants' liability, if any, for these damages arose not as a result of any actual fault on their part, but solely by operation of law.

As cross-complainants acknowledge, " 'the elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible.' " (*Bailey v. Safeway, Inc.* (2011) 199 Cal.App.4th 206, 217.) As detailed above, summary judgment was properly entered as to each of cross-complainants' contract and negligence causes of action upon which they preface their indemnity causes of action. Consequently, cross-complainants cannot show fault on the part of the indemnitor First

26

American.  Accordingly, the trial court did not err in entering summary judgment as to the seventh and eighth causes of action for implied and equitable indemnity.[14]

### DISPOSITION

The judgment is affirmed.  First American shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).


    BLEASE    , Acting P. J.


We concur:


    ROBIE    , J.


    MAURO    , J.

---

[14] Having concluded the trial court did not err in entering summary judgment in First American's favor for the reasons set forth above, we need not consider cross-complainants challenge to the trial court's determination that each of the causes of action is time barred.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| STOCKTON MORTGAGE, INC. et al., | C071210 |
| Cross-complainants and Appellants, | (Super. Ct. No. 39-2009-00213904-CU-BC-STK) |
| v. | |
| MICHAEL TOPE et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Cross-defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Joaquin, Lesley D. Holland, Judge. Affirmed.

Downey Brand, Anthony L. Vignolo and Jennifer L. Williams for Cross-complainants and Appellants.

Garrett & Tully, Ryan C. Squire, Anna Didak and Zi C. Lin for Cross-defendants and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on December 23, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


    BLEASE            , Acting P. J.


    ROBIE             , J.


    MAURO             , J.

2