Filed 11/17/22  Abrahams v. Askew CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HARRY ABRAHAMS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TRENOR ASKEW et al.,<br><br>        Defendants and Respondents. | A160853, A162554<br><br>(Contra Costa County Super. Ct. No. CIVMSC19-01570) |

Harry Abrahams invested money in real estate owned by defendant Kevin Hampton; their relationship ultimately soured after Hampton experienced financial difficulties and Abrahams suffered monetary losses. Abrahams sued Hampton, and he also sued defendants Trenor Askew, TRA Lending, LLC, and TRA Investments, LLC (collectively TRA), alleging they raised money from investors for a real estate scheme that benefitted only defendants and operated to Abrahams's detriment.  Askew and TRA filed a demurrer requesting dismissal of negligent misrepresentation, unfair business practices, and quiet title claims alleged against them, which the trial court sustained without leave to amend.  On appeal, Abrahams argues the court erred.  We disagree and affirm.

1

# BACKGROUND[1]

Hampton sold and offered to sell deeds of trust and assignment of rents for real property and other negotiable instruments. Hampton (or one of his limited liability corporations) was the "borrower" on the deed of trust, and investors, who provided capital, were the "lender." Each deed of trust was secured by a fractional interest in a mortgage on real property. Hampton represented that the real properties providing collateral for the investors' deeds of trust would generate more than enough revenue to cover Hampton's loan payments, the properties' operating expenses, and produce a positive cash flow for investors.

Beginning in 2004, Abrahams and his agent, PENSCO Trust Company (PENSCO), invested Abrahams's retirement funds in various property development projects managed by Hampton. Abrahams or PENSCO had second or third mortgage interests in 11 properties. From 2004 to 2006, Abrahams received regular payments from Hampton from these mortgages. But Hampton's development projects experienced financial difficulties during the 2008 recession. According to Abrahams, Hampton began taking government loans intended to help banks liquidate bad loans and created several limited liability companies to conceal this practice while avoiding capital gains taxes. In addition, Hampton failed to record certain deeds of trust, which made it difficult to determine each lienholder's rights. He then cross-collateralized multiple properties to make the requisite interest payments on his loans to his primary lenders.

---

[1] We deny Abrahams's request to augment the record with his fourth amended complaint because that document does not bear on our analysis here.

At one point, Hampton required more funds and asked his second and third lienholders, such as Abrahams, to execute zero-demand letters — that is, letters indicating the lienholder was waiving a second or third lien on a property. Hampton promised Abrahams he would nonetheless recover his investment because Hampton would shift Abrahams's lien to a property with equity. Based on Abrahams's prior business dealing with Hampton and the trust he placed in Hampton, Abrahams executed zero-demand letters for two specific properties.

In August 2018, Abrahams had several conversations and meetings with Askew, who worked with Hampton to reorganize investors' monetary positions on properties, regarding his investments. Abrahams wanted the properties he invested in to be liquidated to allow him to recover his investments. But Askew told Abrahams that Hampton intended to repay him after the completion of construction and sale of various properties. Askew also told Abrahams he would not foreclose on any properties Abrahams had invested in that were owned by Askew or TRA unless Abrahams could recover his funds. He told Abrahams that Hampton would complete construction on one particular property, which they would then sell and convey the funds to Abrahams. On that basis, Abrahams executed the requested additional zero-demand letter.

But Hampton never shifted Abrahams's liens to other properties. And Askew and TRA foreclosed on or are in the process of foreclosing on three of the 11 properties Abrahams and PENSCO had invested in, with Askew and TRA retaining the primary mortgage interest in each of the properties. Hampton also allegedly allowed government liens, including tax liens, to accumulate on the properties. Moreover, the intended construction was not completed, and the interest generated on the senior loans diminished any

3

possible monetary return for Abrahams.  In the end, Abrahams lost much of his investment — nearly two million dollars.

Relevant here, Abrahams filed a complaint against Hampton, Askew, and TRA, among other defendants, alleging they engaged in negligent misrepresentation and unfair business practices, and seeking to quiet title. Askew and TRA filed a demurrer on these causes of action as to them, which the trial court sustained with leave to amend.  Abrahams filed a second amended complaint, alleging Askew and TRA negligently engaged in fraud and misrepresentation by inducing him to continue investing money into the properties with a promise of a return on his investment, even though there was no equity available in the properties to allow such recovery.  He also alleged Askew and TRA engaged in unfair business practices by failing and refusing to perform all material terms of their agreement with him, and fraudulently conveying title to the properties identified in his complaint through cross-collateralization, which undermined all debt owed to Abrahams.  Finally, Abrahams sought to quiet title to the investment properties as against Askew and TRA.  The court sustained Askew and TRA's second demurrer *without* leave to amend after concluding Abrahams had not plead sufficient facts to support these claims against them.

## DISCUSSION

Review of an order sustaining a demurrer requires examining the complaint de novo to determine whether it states facts sufficient to establish every element of each cause of action.  (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)  "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken."  (*Ibid*.)  We reasonably construe the pleadings, reading the

4

allegations in context, and affirm if the judgment is correct on any stated ground in the demurrer.  (*Ibid.*)  The plaintiff must demonstrate the trial court erred in sustaining the demurrer.  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  And if the demurrer was sustained without leave to amend, we must determine whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  (*Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 676–677.)  We reverse the denial of leave to amend only where there is an abuse of discretion.  (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830.)

Abrahams first contends the trial court erred by dismissing his negligent misrepresentation claim against Askew and TRA.  Specifically, Abrahams alleged he relied on Askew's representations that executing a zero-demand letter would allow Abrahams to recover his investment, that Hampton would repay Abrahams, and that Askew would not foreclose on the properties.  But after executing the zero-demand letters, the properties were foreclosed on and Abrahams lost his investments due to the lack of equity on the named properties.  Abrahams argues Askew promised he would recover his monetary investments, even though Askew knew or should have known Hampton failed to pay taxes on the properties, had not disclosed private construction liens, the equity remaining on the properties rendered it unlikely Hampton would recoup Abrahams's investments, and that construction had been halted.  We conclude there was no error in the court's ruling.

Favorably construing Abrahams's complaint, these allegations fail to state a claim for negligent misrepresentation.  That claim requires a (1) misrepresentation of fact; (2) by a person who has no reasonable grounds for believing the fact to be true; (3) intent to induce another's

5

reliance on the misrepresented fact; (4) justifiable reliance on the misrepresentation; and (5) damage.  (Civ. Code, § 1710; *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.)  A misrepresentation is actionable if it concerns past or existing facts, not future events.  (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 (*Tarmann*).) " '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.' " (*Ibid*.) Statements involving a false promise to perform or not perform at a future time may support an *intentional* misrepresentation claim, but not a claim for negligent misrepresentation.  (*Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458; *Tarmann*, at p. 158 [defendant's statement that he would pay for repairs immediately upon completion and defendant's failure to do so was a promise to perform in the future].)

Here, Askew's statements — that Askew would not foreclose on any of the properties until Abrahams recovered his entire investment, and that Hampton would recover Abrahams's investment if Abrahams refrained from foreclosing on property and construction was completed — were predictions regarding future actions or promises to perform in the future.  Consequently, these statements do not form the basis for a negligent misrepresentation claim.  (*Tarmann, supra*, 2 Cal.App.4th at p. 158.)  Notably, the trial court provided Abrahams the opportunity to amend his complaint to assert an intentional misrepresentation cause of action after sustaining Askew's and TRA's first demurrer.  But Abrahams disclaimed any intention to accuse Askew of intentional fraud.

Askew's statement that executing the zero-demand letters would allow Abrahams to recover his investments likewise does not constitute

6

a misrepresentation of fact. Askew merely expressed his opinion — predicting the financial effects of the zero-demand letter and Hampton placing Abrahams's liens on another property with equity — regarding a future event. (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43–44.) As such, it cannot support a negligent misrepresentation claim. (*Tarmann*, *supra*, 2 Cal.App.4th at p. 158.) And while there are several recognized exceptions to this general rule — " '(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [and] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion' " — Abrahams has not argued or demonstrated Askew's statements fit within any exception. (*Cohen v. S & S Construction Co.* (1983) 151 Cal.App.3d 941, 946.) To the extent Abrahams argues Askew had a contractual duty to disclose all facts known to him about Abrahams's investments, nothing in the complaint indicates Abrahams had a business or contractual relationship with Askew.

We reject Abrahams's argument that he made out a negligent misrepresentation claim by alleging Askew failed to disclose information he knew or reasonably should have known — that there were other priority mortgages and unpaid tax liens on the properties at issue, and construction had been delayed or halted — such that Abrahams's recovery on his investment was unlikely. Negligent misrepresentation claims, as Abrahams acknowledges, entail fraud or deceit and specifically require a positive assertion or assertions of fact. (*Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306.) More is required than the omission or failure to disclose information Abrahams alleges here. (*Byrum v. Brand*

7

(1990) 219 Cal.App.3d 926, 941.) Nor does *Bock v. Hansen* (2014) 225 Cal.App.4th 215, compel a different result, contrary to Abrahams's assertions. That case simply determined an insurance adjuster owed a duty to the insured, and the law of negligent misrepresentation applied. (*Id.* at p. 229.) Aside from noting the adjuster had a duty to communicate accurate information, it did not address any duty to *disclose* information. (*Ibid.* [acknowledging the relationship between an insurer and insured was "special," requiring the imposition of heightened, fiduciary-like duties to the insured].) Similar circumstances are not alleged to exist here.

Because Abrahams fails to allege any actionable misrepresentation of fact, the trial court properly sustained the demurrer to the negligent misrepresentation claim. Having so concluded, we need not address whether Abrahams sufficiently alleged a causal connection between the misrepresentation of fact and harm. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880 [appellate court should affirm sustaining a demurrer if complaint fails to plead any essential element of a particular cause of action].)

Abrahams next contends his allegations that all defendants "failed and refused to perform all material terms of the Agreements; and . . . fraudulently conveyed title to the properties described herein through cross collateralization thus undermining all debt owed to" him, stated an unfair business practices claim against Askew and TRA. We disagree. The unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) Thus, a practice is prohibited as unfair or deceptive, even if it is not unlawful. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) Courts broadly interpret

8

the language in Business and Professions Code section 17200 since the statute targets the public's right to protection from fraud, deceit, and unlawful conduct. (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877.)

Despite this broad construction, Abrahams failed to allege facts supporting the statutory elements of an unfair business practices violation. (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.) Although Abrahams alleges Askew and TRA engaged in unfair business practices by failing to comply with their agreement with him, the complaint fails to allege the existence of any contract or agreement between Abrahams and Askew or TRA. Nor are there any facts to support the allegation that Askew or TRA fraudulently conveyed title to any of the properties identified in Abrahams's complaint. The complaint refers to Hampton incorrectly filing the deed concerning one particular property in the wrong county, Askew's statement that he would ask Hampton to rectify the issue, and Hampton's failure to follow through. But Abrahams does not argue, nor do we conclude, that this allegation rises to the level of a fraudulent conveyance by Askew and TRA — "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim" — let alone an unfair business practice claim. (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13.)

We do not address Abrahams's argument, as we understand it, that he properly alleged an unfair business practices claim because Askew and TRA violated the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). That statute prohibits using deceptive representations, advertising goods or services with the intent not to sell them as advertised, or misrepresenting the authority of a representative. (*Id.*, § 1770.) The complaint contains no

9

allegations regarding this statute, nor did Abrahams raise this argument in the trial court. The argument is thus forfeited. (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 [arguments raised for the first time on appeal are generally deemed forfeited].)

Finally, Abrahams fails to state a quiet title claim against Askew and TRA. One of the elements for a quiet title cause of action is the existence of "adverse claims to the title of the plaintiff against which a determination is sought." (Code Civ. Proc., § 761.020.) But Abrahams only alleges that he, Hampton, and several limited liability companies — Enigami Global Investments, LLC, Community First Development, LLC, Focus Group Lounge Pinole, LLC, Focus Group Ventures, LLC — have adverse claims to the title for any of the identified properties at issue. There is no allegation Askew or TRA has any adverse claims to title. Accordingly, Abrahams's quiet title claim against Askew and TRA fails. (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1010.)

We reject Abrahams's remaining arguments. The trial court did not abuse its discretion by denying Abrahams leave to further amend his claims. Abrahams has not demonstrated a reasonable possibility another amendment could cure the defects identified above. (*Dones v. Life Ins. Co. of North America, supra*, 55 Cal.App.5th at p. 677.) In fact, despite being given the opportunity to allege an intentional fraud claim against Askew, Abrahams disclaimed any intention to do so. Abrahams's conclusory statement that he can amend his complaint to state facts making out these claims fails to satisfy his burden here. And the court did not improperly consider facts asserted in Askew's or TRA's memorandum supporting their demurrer. Relevant here, the court's decision cites only the facts alleged in Abrahams's

10

complaint.  (*Fremont Indemnity Co. v. Fremont General Corp.*, *supra,* 148 Cal.App.4th at p. 111.)

## DISPOSITION

The judgment of dismissal is affirmed.

_____

Rodríguez, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Petrou, J.

A160853 & A162554